HERBERT S. WALSH *et al.* Defendants in Error, *vs.* THE NORTH AMERICAN COLD STORAGE COMPANY, Plaintiff in Error.

*Opinion filed Oct. 28, '13—Rehearing petition stricken Dec. 3, '13.*

1. MECHANICS' LIENS—*when a decree will not be reversed on evidence concerning delay by contractors.* A decree establishing mechanics' liens in favor of contractors for the amounts claimed to be due them on their contracts for their portions of the work done and materials furnished for the construction of a building will not be reversed as contrary to the evidence concerning the delay by them in completing their work, where the evidence is sufficient to sustain the conclusion that, aside from delays for which they were not responsible or which were the fault of the owner, they prosecuted their work with reasonable diligence.

2. SAME—*evidence of damage sustained by delay in completing contract must be reasonably certain.* Where claims for liens by independent contractors on a building are defended by the owner upon the ground that he has been damaged by the failure of the contractors to complete their work within the time fixed by the contracts, the owner must prove by competent evidence, with reasonable certainty, the amount of such damages and the proportion thereof attributable to the contractors, respectively, and no damages can be awarded where the proof on that subject is merely speculative and uncertain.

3. SAME—*when owner cannot insist that contractor has waived its right to excuse a delay.* Where the owner of a building in process of erection is familiar with all the delays and the causes thereof, yet continually urges the continuance of the structural steel work without attempting to avail itself of a provision of the

contract authorizing it to furnish additional labor or material, it cannot insist that the contractor, by failing to get an extension of time, under the provisions of the contract, when it became apparent the foundation would not be completed on time, has waived the right to excuse its own delay on the ground of delay in completing the foundation.

4. SAME—*when contractor is not required to obtain a final certificate from architect.* If the refusal of the architect to issue the final certificate is based upon the fact that there is a dispute between the owner and the contractor over the question of the time when the contract was completed, which was a question the architect had no authority to arbitrate under the contract, and both the architect and the owner have accepted the work as to quality and character, it is the architect's duty to issue the final certificate, and his refusal to do so excuses the contractor from procuring it.

5. SAME—*when an allegation of facts showing waiver of performance is unnecessary.* The general rule is, that where a complainant relies upon facts showing a waiver by the defendant of performance of a building contract within the time specified he must plead such facts, but if the complainant avers acceptance of the work by the defendant no allegation of waiver of performance is necessary, as an acceptance implies a waiver of all precedent conditions not performed.

6. SAME—*when interest should be allowed from filing of petition.* Where a petition for a mechanic's lien alleges the balance due the petitioner and prays for a lien for the amount due pursuant to the statute, interest should be allowed from the filing of the petition, even though the petition does not specifically claim interest. (*Mills* v. *Heeney,* 35 Ill. 173, followed; *Prescott* v. *Maxwell,* 48 id. 82, and *Heiman* v. *Schroeder,* 74 id. 158, distinguished.)

7. SAME—*petition for a mechanic's lien need not ask for costs.* A petition for a mechanic's lien need not ask that the costs of the suit be awarded to the petitioner in order to entitle him to a decree for costs upon obtaining a decree for the relief prayed. (*Carter* v. *Lewis,* 29 Ill. 500, explained.)

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

L. A. STEBBINS, (MAYER, MEYER, AUSTRIAN & PLATT, of counsel,) for plaintiff in error.

SAMUEL J. LUMBARD, for defendants in error Herbert S. Walsh and Michael C. Masterson.

KEMPER K. KNAPP, ROBERT W. CAMPBELL, WILLIAM D. McKENZIE, and CHARLES P. SCHWARTZ, for defendant in error the American Bridge Company.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court by *certiorari* to review a judgment of the Appellate Court for the First District affirming a decree of the circuit court of Cook county in a proceeding to enforce mechanics' liens against certain real estate of plaintiff in error, the North American Cold Storage Company. The suit was originally begun by defendants in error Walsh & Masterson, co-partners, filing their petition to enforce a lien claimed by them for a balance due under a contract with plaintiff in error for work done and materials furnished and for extra labor and materials in building the sub-structure or foundation for a sixteen-story addition to its cold storage structure, then consisting of a fifteen-story building. The addition adjoined the building then occupied and used by plaintiff in error on the south and covered a space about sixty feet square. The petition alleged plaintiff in error agreed to pay complainants $11,000 for furnishing the material and doing the work, which by the terms of the contract was to be completed on or before June 5, 1904; that complainants had completely performed their contract but had been paid only the sum of $5000. It was also further alleged that complainants had furnished extra material and performed extra labor of the value of $815.13, and a decree was prayed making the amounts claimed to be due complainants a lien on the property of plaintiff in error. Numerous parties were made defendants to the petition, among them the American Bridge Company of New York. That company filed an answer in the nature of a cross-petition, alleging that on the 9th day of

June, 1904, it entered into a contract with plaintiff in error to furnish all the material and perform all the labor in the erection of the structural steel and iron work on said addition, in accordance with the plans and specifications prepared by Frank B. Abbott, the architect, the work to be completed on or before September 1, 1904, for which plaintiff in error agreed to pay the bridge company $41,000. The answer averred that the bridge company had fully completed the work and had furnished extra material and performed extra labor of the value of $477.02, but that only $25,000 had been paid by plaintiff in error, and the bridge company prayed an equal lien with Walsh & Masterson against the property for the balance. Plaintiff in error, in its answer to the claims of both Walsh & Masterson and the bridge company, did not deny they had, respectively, furnished the material and performed the work as alleged, but set up as a defense that they did not do the work within the time agreed upon in the contracts; that Walsh & Masterson were required by their contract to complete the sub-structure by June 5, 1904, but did not complete it until August 4, 1904; that the bridge company agreed to complete its part of the work September 1, 1904, but did not complete it until about December 17, 1904. Plaintiff in error claimed to have sustained damages, by reason of the delay in the completion of the work, in excess of the balance due Walsh & Masterson and the bridge company, and denied they, or either of them, were entitled to a decree.

After the issues were made up the cause was referred to a master in chancery to take the testimony and report his conclusions of law and fact. The order of reference was made in January, 1906, and the report of the master was made in November, 1908. It was not denied by plaintiff in error that the work done and the materials furnished by both Walsh & Masterson and the bridge company were in accordance with their respective contracts and that there was due them on their respective contracts the amounts

claimed unless they were responsible for the delay in completing the building, which delay caused damages to plaintiff in error. Upon these issues a great mass of testimony was taken before the master, covering nearly three thousand pages. The master's report is a voluminous document, covering seventy printed pages of the abstract, and is paragraphed into eighty-seven findings and eighteen conclusions. The master found that Walsh & Masterson and the bridge company were entitled to liens for the balance due them under their contracts, and interest thereon, and for extras claimed, and recommended a decree therefor. Sixty-one objections filed by plaintiff in error to the master's report were overruled by him and were renewed as exceptions before the chancellor. Most of them were overruled. Those that were sustained did not affect the merits of the case, and a decree was entered in accordance with the master's report, and that decree has been affirmed by the Appellate Court.

Upon the issue whether the delay in the completion of the building was the fault of Walsh & Masterson and the bridge company the evidence was very voluminous and can not be even briefly summarized within reasonable limits. We have read it and are satisfied it warrants the conclusion that Walsh & Masterson and the bridge company were not to blame for the delay. Delays for which they were not responsible prevented Walsh & Masterson from completing the foundation until some time in the early part of August, and that necessarily delayed the beginning of work upon the superstructure. After the bridge company was able to begin work on its contract, delays were caused by the action or want of action of plaintiff in error. Both companies appear to have prosecuted the work with reasonable diligence aside from the delays for which they were not responsible, and a reversal would not be authorized on that issue on the ground that the decree is contrary to the evidence.

The damages claimed to have been sustained by plaintiff in error amount to $80,379.35. It sought to prove that but for the failure of Walsh & Masterson and the bridge company to complete their contracts within the time agreed upon, the building could have been completed and ready for use January 1, 1905. It was not, in fact, completed until about June 1, 1905. The items that make up the damages claimed are: Amount paid contractor who had the contract to lay the concrete floors and the roof, in addition to the amount the original contract called for, $2379.35; loss of labor efficiency after January 1, laying concrete in cold weather, $5000; damage on account of the character of concrete work done during cold weather, $2000; rental value of 530,000 cubic feet of space for five months, at twelve cents per cubic foot per annum, $26,500; loss of use of one-half of space in old building, based on rental value for five months, $17,500; for being prevented by the delay from installing a butter renovating plant on the top floor, $27,000. It was incumbent upon plaintiff in error to prove by competent evidence, with reasonable certainty, that it was damaged and the amount of the damage. We are of opinion the proof on this question was too uncertain and speculative in character to furnish a proper basis for the assessment of damages. Furthermore, it was not shown what part of the damages claimed was attributable to the delay of Walsh & Masterson and what proportion of them to the bridge company. They were, of course, not jointly liable for all the damages claimed, and to justify awarding damages against them it should be shown with some degree of accuracy that damages had been caused, and the amount caused by each of the parties, respectively. Counsel for plaintiff in error in their brief say the damages should be apportioned by ascertaining the fraction of the total delay that each contractor was responsible for, and such fraction will be the measure of his liability. We cannot adopt the suggestion. The proof furnishes no reasonable basis upon

which a court could apportion the damages between Walsh
& Masterson and the bridge company, even if it established
plaintiff in error had sustained damages, as claimed.   *Jef-*
*ferson Hotel Co.* v. *Brumbaugh,* 168 Fed. Rep. 867.

The contracts with Walsh & Masterson and the bridge
company each contained a provision that if they were ob-
structed or delayed in the prosecution of the work there
should be an allowance of additional time for completing
the work, but no such allowance should be made unless
claimed in writing to the architect at the time of the delay,
and the architect should award and certify the amount of
additional time to be allowed.   The contracts also provided
that if the contractor failed to employ a sufficient number of
skilled workmen, or to furnish materials of proper quality
and quantity, or failed to prosecute the work with prompt-
ness and diligence, plaintiff in error should have the right,
upon giving three days' notice, to provide the labor and ma-
terials and deduct the cost from the money then due or to
become due under the contract.   Neither party made any
attempt to avail itself of these provisions.   It is now in-
sisted that the bridge company not having asked for an
extension of time when it was apparent the delay in the
completion of the sub-structure would delay the work of
erecting the superstructure, cannot avail itself of the excuse
that it was delayed by the failure of Walsh & Masterson to
complete their work in the time agreed upon.   Plaintiff in
error was familiar with the delays and the causes of them.
A representative of it was on the ground almost every day,
and it continually urged the contractors to go on with the
work, with no suggestion of any purpose or thought of
availing itself of its privilege, under the contract, of pro-
viding either labor or material for the purpose of promot-
ing the completion of the work.   The master concluded that
by its conduct plaintiff in error waived its right to insist
that the bridge company was not entitled to any extension
beyond the time limited unless such extension was asked

for and allowed under the provisions of the contract with
reference to procuring an extension of time, and this con-
clusion was approved and adopted by the circuit and Ap-
pellate Courts.   Such waiver would not be a bar to a recov-
ery of damages resulting from delay if the delay was the
fault of the contractor, but we agree with the circuit and
Appellate Courts that plaintiff in error is not now in a posi-
tion to say that the contractor must be held responsible for
delays resulting from no fault of its own or from the fault
of plaintiff in error, because no extension of time was se-
cured.   Mere delay in the performance of a building con-
tract will not defeat the right of the contractor to collect
the contract price, and delay caused by the owner excuses
the contractor so far as the time of performance is con-
cerned.   *Nibbe* v. *Brauhn,* 24 Ill. 268; *Paddock* v. *Stout,*
121 id. 571; *Taylor* v. *Renn,* 79 id. 181; *Sperry* v. *Fan-
ning,* 80 id. 371.

Plaintiff in error further contends that the bridge com-
pany did not obtain a final certificate from the architect ac-
cepting the work, and insists that no recovery can be had
of the balance due until such certificate is obtained.   The
cross-petition of the bridge company alleged that the archi-
tect had accepted the work done and materials furnished
pursuant to the terms of the contract; that he had issued
certificates showing the bridge company was entitled to sums
aggregating $35,000, upon which it had been paid $25,000,
but had fraudulently refused to issue a final certificate for
the balance due.   The contract provided that final payment
should be made within ten days after the work was com-
pletely finished and certified to by the architect.   Under the
terms of the contract the issuance of the final certificate was
necessary unless facts were proven which show a waiver of
performance in that respect or that it was fraudulently re-
fused by the architect.   Upon the question whether a de-
mand was made upon plaintiff in error for a final certificate
the testimony is conflicting.   Frank M. Wyant, treasurer of

the bridge company, testified he made oral demand upon the architect for a final certificate on two different occasions. This is denied by the architect. Whatever may be the facts in that regard, the evidence shows that the architect issued one certificate for $15,000 and it was paid. On November 26, 1904, he issued a second certificate for $20,000, and $10,000 of this amount was paid. December 17, 1904, the president of plaintiff in error wrote the bridge company, in response to a demand for payment, that it would be glad to pay the balance of the contract price were it not that Walsh & Masterson had made the bridge company defendant in their suit against plaintiff in error to recover the balance due them on their contract. On January 20, 1905, the following letter was sent to the bridge company by the architect: "I herewith accept the character and quality of the erection work as performed by the Oscar Daniels Company in the erection of the structural steel frame for a sixteen-story addition to the North American Cold Storage Company's building at Canal and Kinzie street, but this acceptance is not to be construed as an acceptance of the work as to the limit of time in which the work of erection was to be done." The Oscar Daniels Company mentioned in this letter did the erecting work for the bridge company. Under the contract it was the duty of the architect to certify to the quality and character of the erection work done by the bridge company, but it was not his duty to act as arbitrator in the settlement of damages arising out of the failure of the bridge company to complete its work within the time specified in the contract. He made no objections at any time to the quality and character of the work, and upon its completion he should have issued his certificate accordingly. We think it quite apparent from the evidence that he would have done so had it not been for the objection of the president of plaintiff in error. Even if the letter of January 20, 1905, above set out, is not such a final certificate as is contemplated by the contract, the evi-

dence shows the work was completed, that no objections were made to it, that it was accepted by plaintiff in error, and the evidence further shows that plaintiff in error was not entitled to any deductions from the contract price, for damages or otherwise. Under the circumstances the bridge company was not required to obtain a final certificate.

It is also insisted that there is a variance between the pleadings and the proof. The contracts provided that the work of Walsh & Masterson should be completed by June 5, 1904, and that of the bridge company by September 1, 1904. Both the petition of Walsh & Masterson and the cross-petition of the bridge company alleged a performance of the contracts. The proof shows that the work under neither contract was completed within the time mentioned. Plaintiff in error contends that if the contracts were not performed in accordance with their terms there must have been a waiver of performance or there could be no recovery, and if there was such a waiver it was necessary to plead and prove it. The general rule is, that where a plaintiff relies on facts which show a waiver of performance he must plead such facts, and he cannot plead performance and recover under proof of waiver of performance. (*Expanded Metal Fireproofing Co.* v. *Boyce,* 233 Ill. 284.) In this case the petition alleges a performance of the contracts and an acceptance of the work. Where an acceptance is alleged it renders unnecessary an allegation of waiver of performance, since an acceptance implies a waiver of all precedent conditions not performed. Furthermore, this question was not raised before the master or the chancellor but was first raised on appeal.

Plaintiff in error insists the allowance of interest on the balance due each of the contractors under their respective contracts was erroneous. It is not denied the statute authorizes a recovery of interest in such cases when asked for by the pleadings, but it is contended that to authorize a recovery of interest it must be asked for in the petition. In

this case the petition of Walsh & Masterson alleged there was a balance due them, under their contract, of $6000, and $815.13 for extra material furnished and extra labor performed, for which they claim "a lien upon the said premises and the buildings and improvements thereon, pursuant to the statute in such case made and provided." The prayer of the petition is that they may be decreed to have a lien upon the premises for "the amount so due and owing them as above set forth." The cross-petition of the bridge company alleged there was a balance due it, under the contract, of $16,000, and $477.02 for extra work and material, and the prayer of the petition is that cross-petitioner be decreed "a lien upon the premises for the sum of $16,477.02."

*Mills* v. *Heeney*, 35 Ill. 173, was a petition to enforce a mechanic's lien. The petition alleged there was due petitioner $535.20 and prayed a decree making the same a lien on the premises described. The decree found there was due petitioner $649.10, which was made a lien against the premises. On appeal to this court by defendant below it was insisted, among other errors assigned, that the court erred in decreeing a greater sum than was claimed in the petition. The court said: "A decree in a suit to enforce a mechanic's lien should not be rendered for a larger sum than is claimed by the petition, and interest from the time it was filed, where it asserts no claim for interest."

*Prescott* v. *Maxwell*, 48 Ill. 82, was a mechanic's lien case, and there was a decree for a larger sum in favor of the petitioner than was claimed in his petition. This was assigned as error upon the appeal to this court, and upon this question the court said: "Against this objection it is urged by appellee that interest legitimately followed on the presentation and refusal of defendant to pay the claim. If this were so it should have been claimed in the petition. The whole amount demanded was $239, and beyond that there could be no recovery." While it is not so stated, we

think it apparent from a careful examination of the opinion that the trial court computed interest from the time of the completion of the work and not from the time the petition was filed. No reference is made in the opinion to *Mills v. Heeney, supra,* and it was never intended by the court to overrule that case. The decree was erroneous under the authority of *Mills v. Heeney,* but the court failed to mention the rule announced in that case that the petitioner might recover interest from the date of filing the petition without specifically claiming interest therein. When understood, the two cases are not in conflict upon this question and are in harmony upon the proposition that interest prior to filing the petition cannot be recovered unless claimed therein.

*Heiman v. Schroeder,* 74 Ill. 158, was also a mechanic's lien case, and this court affirmed the decree allowing interest on the amount due under the contract from the time it was agreed to be paid though it does not appear to have been claimed in the petition. The decree was, however, for a less sum than was claimed in said petition to be due. The court referred to *Mills v. Heeney* and *Prescott v. Maxwell,* and said they were not applicable because in those cases the recovery was for a larger sum than was claimed in the petition to be due, and that unless interest on such amount was claimed in the petition none could be recovered thereon.

While in the case of *Heiman v. Schroeder* interest was allowed, the decree was for a less sum than was claimed by the petition, and the claim for a greater sum than the amount due under the contract was construed to include interest though interest was not specifically mentioned. We do not regard any of the cases as overruling or impairing the rule announced in *Mills v. Heeney, supra.* The rule there announced should have been applied in this case, and defendants in error, Walsh & Masterson and the American Bridge Company of New York, should have been allowed

interest on the amounts found due them, from the date their respective petitions were filed.

The plaintiff in error also contends that as the petitions of defendants in error did not ask for costs no costs should have been awarded against it, and cites *Carter* v. *Lewis,* 29 Ill. 500, as supporting that contention. We think this an entire misapprehension of the case relied upon. In that case several judgment creditors filed a bill seeking to have the judgments decreed to be a lien against and satisfied out of certain real estate alleged to be the property of the judgment debtor. The bill set up the amount for which each of the judgments was rendered and prayed a sale of the property to satisfy the respective amounts mentioned. No claim was made in the bill for interest on the judgments or for costs paid in obtaining them. This court held complainants were entitled to a decree only for the amounts alleged in their bill, and as there was no claim for interest "or costs in the original suits" set up in the bill none could be recovered. It is perfectly clear the costs referred to were the costs of the suits in which the judgments sought to be enforced were rendered, and not the costs of the suit seeking to enforce those judgments as liens against the judgment debtor's property. It was not necessary that defendants in error should have asked that costs be awarded them to entitle them to a decree for their costs if they were entitled to a decree for the relief prayed.

The decree was right in all respects except as to the allowance of interest, and for the error pointed out in that respect the judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause remanded to the circuit court, with directions to render a decree for the amounts found due defendants in error by the decree of said circuit court, with interest thereon from the date of the filing of their respective petitions. As the principal part of the costs of this writ of error was incurred for the purpose of defeating any liability of plaintiff in error to defendants

in error, the costs of the suit in this court will be apportioned two-thirds to plaintiff in error and one-half of one-third to each of defendants in error, Walsh & Masterson and the American Bridge Company of New York.

*Reversed in part and remanded, with directions.*