STRUCTURAL SALES, INC., Plaintiff-Appellant, v. CHARLES VAVRUS, d/b/a Vavrus and Associates, Defendant-Appellee.

Third District   No. 3—84—0376

Opinion filed April 25, 1985.—Rehearing denied May 29, 1985.

Louis R. Bertani, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, and David H. Pauker, of Juron, Pauker & Rubin, Ltd., of Chicago, for appellant.

Thomas Feehan, of Thomas, Wallace, Feehan, Baron & Kaplan, Ltd., of Joliet, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

This appeal arises from a suit brought by Structural Sales, Inc., to foreclose a mechanic's lien filed against Charles Vavrus, d/b/a Vavrus & Associates. Vavrus counterclaimed against Structural Sales alleging that a delay caused by Structural Sales' failure to meet the time schedule appended to the construction contract entitled Vavrus to a setoff in excess of the balance owed on the contract. The circuit court of Will County found that Structural Sales was entitled to a lien in the amount of $132,145 (the balance owed on the contract plus extras). The trial court further found that the approximate four-month delay was caused entirely by Structural Sales and allowed a setoff of $100,568 against plaintiff for loss of profits, advertising, expense of hiring a manager, heating the premises, and use of a different tennis court surface, among other things.

The contract between Structural Sales and Vavrus was entered into June 22, 1977, and provided that Structural Sales was to provide all of the steel for the construction of Charlie's Club, a health club complex which was being built by Charles Vavrus and Vavrus & Associates, his construction company. The complex was to include a health club, dining facilities, a retail area and an indoor tennis building. The tennis building was to be a prefabricated steel building which Structural Sales was to order and erect. The remainder of the steel work consisted of installation of roof and floor joists, steel columns and a deck area, and Structural Sales was to provide anchor bolts, setting plates and lintels to be incorporated in several conventional masonry buildings which comprised the remainder of the Charlie's Club complex.

An addendum attached to a confirmation of order signed by the parties provided a time schedule for completion of the steel work on the health club in four phases. This schedule did not include the retail portion of the complex. The final completion date on the schedule was August 29, 1977, and the addendum provided further that "Should the above schedule be materially violated, Vavrus and Associates shall have the right to complete said work and prorate payment." Although the steel work was not completed in December of 1977, Vavrus at no time attempted to exercise its right to replace Structural Sales and prorate payment. Furthermore, despite the delay, the job performed by Structural Sales was of good quality and was fully performed.

The issues before us on appeal are first, whether the addendum provided for an exclusive remedy limiting Vavrus to replacing Structural Sales as the steel contractor and prorating payment, and therefore, the trial court could not properly set off damages for delay. Sec-

ond, whether the trial court's finding that Structural Sales caused the delay was against the manifest weight of the evidence. And, third, whether the setoffs themselves were supported by the evidence.

▪ As to the first issue, Structural Sales argues that the clause in the addendum to the contract which stated "Should the above schedule be materially violated, Vavrus and Associates shall have the right to complete said work and prorate payment" prohibited the trial court from setting off damages for delay. The gist of plaintiff's argument is that the above contract provision was an agreement by the parties that if the schedule was not met Vavrus was to consider the contract breached and proceed to complete the steel work and set off the value of completion from the contract amount of $202,000. This, plaintiff argues, was Vavrus' sole remedy for delay.

The basic rule is that the parties to a contract may limit their rights, duties and obligations by express agreement. However, the contract must clearly indicate that the parties intend that the stipulated remedy be the sole or exclusive remedy. (*Board of Regents v. Wilson* (1975), 27 Ill. App. 3d 26, 32, 326 N.E.2d 216, 220.) In this case, we do not believe that the parties meant that the provision in the addendum provide the sole remedy in case of a failure to follow the time schedule. The contract provision confers a right upon Vavrus to terminate the contract and proceed with the steel work himself. It is clear from the record that both Vavrus and Structural Sales agreed to proceed with their contract obligations on several occasions after there was no possibility that the time schedule could be followed. In this case, there is no indication that either party intended the remedy set out in the addendum to be the exclusive remedy in case of a material violation of the time schedule. We, therefore, find that Vavrus was not precluded by the contract from seeking damages for the delay allegedly caused by Structural Sales in its counterclaim to this mechanic's lien foreclosure suit.

▪ Plaintiff's second allegation of error is that the trial court's finding that the delay was caused by Structural Sales was against the manifest weight of the evidence. We agree. Section 13 of the Mechanics' Liens Act (Ill. Rev. Stat. 1977, ch. 82, par. 13) provides that in pertinent part

> "The owner may make any defense against the contractor by way of counterclaim that he could in any civil action for the payment of money * * *." (Ill. Rev. Stat. 1977, ch. 82, par. 13.)

Therefore, Vavrus properly brought his counterclaim for delay in this action and common law principles of contract law govern its disposition. The general rule is that a party who fails to complete a contract

within a specified time can be held liable for damages caused by the delay. (*Sperry v. Fanning* (1875), 80 Ill. 371.) The party claiming damages for delay must prove that the delay was the fault of the party against whom the damages are sought. Despite the finding of the trial court to the contrary, we find that the evidence does not support a finding that Structural Sales was at fault for the delay. It is clear from the record that numerous causes contributed to the delay in completion of the steel work. Furthermore, both parties conceded in argument that the schedule set out as an addendum to the contract was never followed because the site was not ready. The record indicates changes were made in certain roof joists requiring refabricating and changes in the shop drawings. The parties admitted revising the schedule for steel work sometime in late August 1977 by mutual agreement. This alone contradicts the finding of the trial court that Structural Sales alone caused the delay.

The next question that we must decide is whether the damages caused by delay should be apportioned between the parties when both parties were apparently at fault for the delay. In *Pathman Construction Co. v. Hi-Way Electric Co.* (1978), 65 Ill. App. 3d 480, 382 N.E.2d 453, the trial court was able to apportion damages between a contractor and subcontractor. However, the appellate court in *Pathman* relied upon *Walsh v. North American Cold Storage Co.* (1913), 260 Ill. 322, 103 N.E. 185, in reaching its conclusion that the damages for delay in *Pathman* could properly be apportioned. In *Walsh*, the Illinois Supreme Court found that the proof in that case was too uncertain and speculative to furnish a proper assessment of damages. (260 Ill. 322, 327, 103 N.E. 185, 187.) The court went on to state that "[t]he proof furnishes no reasonable basis upon which a court could apportion the damages between Walsh & Masterson and the bridge company, even if it established plaintiff in error had sustained damages, as claimed." 260 Ill. 322, 327-28, 103 N.E. 185, 187.

Unlike *Pathman*, we do not believe the delay in this case could be allocated between the parties because the proof is too speculative and uncertain. The record reveals that Vavrus, his field superintendent and the rest of his construction crew were unfamiliar with the construction of steel buildings and knew very little about the problems with steel fabrication and erection. None of the other subcontractors, *i.e.*, masons and plumbers who worked regularly for Vavrus, were familiar with the erection of steel buildings. None of these subcontractors had contracts with Vavrus which required their work be completed within a certain time, and there is no proof in the record that any of these subcontractors or their men sat idle on the job waiting for Structural

Sales to complete the steel work. The record indicates that the parties worked together to complete Charlie's Club after the project got off to a slow start and admittedly could not be completed by the agreed time set out in the addendum. Because numerous factors contributed to the delay in completion and both parties agreed to at least one revision in the time schedule, we find that the proof in this case was too speculative and uncertain, and, even though some damages arguably resulted, they were not such that they could be apportioned between the parties.

Because we find that no damages for delay could be allowed as set-offs on the mechanic's lien, we need not reach plaintiff's allegation that the evidence does not support the damages allowed as setoffs. We, therefore, affirm the decision of the circuit court of Will County that plaintiff was entitled to a lien in the amount of $132,145 and reverse the damage award in favor of defendant for delay in completion of the contract. We instruct the trial court to set off crane rental in the amount of $6,568 from the judgment in favor of Structural Sales, since both parties agree this was an expense chargeable to Structural Sales.

Affirmed in part, reversed in part and remanded with instructions.

SCOTT and WOMBACHER, JJ., concur.